**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ONO'S TRADING COMPANY, LLC, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 04-0706-CG-C** |
| | ) | |
| **STUART A. PARNELL, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on plaintiffs' motion and brief in support for summary judgment as to Count I of the complaint (Docs. 73, 75), opposition thereto of defendant, Stuart A. Parnell (Doc. 82), and plaintiffs' reply (Doc. 89). For the reasons stated below, the court finds that defendants have violated 15 U.S.C. § 1125(a) and that plaintiffs are entitled to permanent injunctive relief. However, the court finds that plaintiffs are not entitled to statutory damages under 15 U.S.C. § 1117(c). Therefore, plaintiffs' motion is due to be GRANTED, but the court will order plaintiffs to file a brief and supporting documents demonstrating damages under 15 U.S.C. § 1117(a).

**BACKGROUND**

The majority of background facts from which this case arises are not in dispute and can be gleaned from the complaint and answers filed by the parties. In October 2003, Stuart Parnell formed Ono's Trading Company, LLC ("Ono's Trading") for the purpose of engaging in the business of selling specialty sunglasses. In November 2003, Parnell applied for a patent with the

United States Patent and Trade Mark Office for his design of a multifocal sunglass product. In December 2003, plaintiffs purchased an interest in, and became members of, Ono's Trading. In April 2004, Parnell assigned the patent application to Ono's Trading. In August 2004, Parnell sold his interest in Ono's Trading to plaintiffs and signed an additional assignment of the patent application to Ono's Trading. To date, no patent has been granted to Ono's Trading. The multi-focal sunglasses sold by Ono's Trading are marked with an emblem or logo that consists of the letter "N" surrounded by two concentric circles or Os with one of the circles thicker than the other. Parnell formed a company called "The Nautical Group, LLC" which, like Ono's Trading, sells sunglasses with multifocal lenses. Defendants acknowledge that the "N" with two concentric circles logo belongs to plaintiffs, but assert that defendants have no interest or desire to use the mark in the marketing or production of their sunglass products. (Doc. 82, p. 3).

Plaintiffs have presented evidence that a salesman for Ono's Trading discovered in September 2004, that Parnell was displaying sunglass products with Ono's Trading's name and logo at a trade show in Denver, Colorado. (Bailey Affid. ¶ 5). Parnell testified that he decided to attend the Denver trade show when Van Koppersmith told Parnell that Ono's Trading was going. (Parnell Depo. p. 227). At the trade show, Parnell displayed the sunglasses in two locations: they were displayed at a booth under the name "The Nautical Group" and at a table designated for new products. (Bailey Affid. ¶¶ 5-6). Ono's Trading promoted its own sunglasses at the trade show which appeared to be identical to the glasses displayed by The Nautical Group, except that the Nautical Group sunglasses were listed at a lower price. (Id. at ¶ 6). Ono's Trading had intended to introduce its sunglasses as new products at the trade show. (Id. at ¶ 7). Ono's Trading's salesman stated that there was much confusion among the people attending the

trade show about these identical sunglass products being promoted by two different companies. (Id. at ¶ 7). Parnell does not deny that he displayed sunglasses with Ono's logo at the trade show in Denver. (Doc. 82, p. 3). Parnell also admits that he may have sold a couple pairs at the trade show "to people walking by." (Parnell Depo. p. 212). Parnell claims that he purchased the frames as overstock from plaintiffs' supplier and that his normal process is to remove the logo and style name by applying acetone to the frame. (Doc. 82, p. 3; Parnell Affid., ¶ 4; Parnell Depo. pp. 137). According to Parnell, his use of frames with the Ono's Trading's logo was the result of an oversight by his shipping department.(Doc. 82, p. 3; Parnell Depo. p. 218-219, 228).

Plaintiffs also presented evidence of several other instances where sunglasses with the Ono' Trading logo were given, displayed, and/or sold by defendants. (Affidavits of Bailey, Koppersmith, McMurphy, Keas, and Paulk) or where Parnell represented that he or his sunglass products were associated with Ono's Trading (Arnold Affid.).

The parties entered into a joint stipulation and consent order signed by counsel for Ono's Trading and counsel for Parnell (Doc. 8) which was filed with the court on December 9, 2004. In the consent order, the parties agreed not to use or conduct any business or manufacture, market, or sell any product using any of the logos, trade names, trade marks, or trade dress used by Ono's Trading, including the name "Ono's Trading Company, LLC," "Ono's," "OTC," or any other similar name likely to be confused with these names or words.

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002)(quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil

Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Count I - Lanham Act**

Count I of the third amended complaint (Doc. 158) asserts a claim for unfair competition, pursuant to 15 U.S.C. § 1125.[1] The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in ··· commerce against unfair competition." 15 U.S.C. § 1127.

> In addition to protecting registered marks, the Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of "any word, term, name, symbol, or device, or any combination thereof...which ... is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods...."15 U.S.C. § 1125(a).

[1] Count I of the Third Amended Complaint (Doc. 158) asserts claims under both §§ 1125(a) and 1125(c). However, plaintiffs' motion for summary judgment only discusses the requirements of 1125(a). Although there is some overlap in analysis under the two provisions, plaintiffs' motion for summary judgment does not mention or fully support their claim for "dilution of famous marks" under § 1125(c). In particular, plaintiffs have not demonstrated or even argued that the mark at issue is "famous." Therefore, for the purpose of this summary judgment motion, the court will analyze plaintiffs' claim only under § 1125(a).

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209, 120 S.Ct. 1339, 1342 (2000); see also Cumulus Media, Inc. v. Clear Channel Communications, Inc., 304 F.3d 1167, 1172, n. 3 (11th Cir. 2002) ("While it appears that CMI has not registered "The Breeze" and thus cannot proceed under § 32 of the Lanham Act, 15 U.S.C. § 1114, it nonetheless may proceed under § 43(a), 15 U.S.C. § 1125(a), if it has made use of the mark in commerce." citations omitted).

> To establish a prima facie case in an ordinary trademark infringement suit, a plaintiff need only demonstrate "(1) that it has trademark rights in the mark or name at issue ... and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the ... name...." Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir.1984).

Ferrellgas Partners, L.P. v. Barrow, 143 Fed.Appx. 180, 186 (11th Cir. 2005); see also Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). Plaintiffs assert that they have the exclusive rights to the logo Ono's Trading places on its sunglasses - which consists of the letter "N" surrounded by two concentric circles with one of the circles thicker than the other. Defendants concede that Ono's Trading is entitled to protection from infringement on this trademark. (Doc. 82, p. 4). Defendants assert that they have no intention of infringing this trademark and that any incidences complained of by plaintiffs have been harmless mistakes which have not caused any pecuniary damage or disparagement to plaintiffs and from which defendants have not profited. Id. However, the Lanham Act does not require that plaintiff show it suffered pecuniary damage or that the alleged infringer profited from using the trademark. The "touchstone test for a violation of § 43(a) is the likelihood of confusion resulting from [the alleged violation.]" Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1207 (11th Cir. 2004) (citation omitted).

> Likelihood of confusion for purposes of § 43(a) of the Lanham Act is determined by analysis of a number of factors, including: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, *i.e.*, retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, *e.g.*, does the defendant hope to gain competitive advantage by associating his

> product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.

Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir. 1984) (citations omitted). The factors are not rigidly weighed and are merely a guide for the Court to focus on the basic question: likelihood of confusion. Montana Professional Sports, LLC v. Leisure Sports Management, Inc., 422 F.Supp.2d 1271, 1278 (M.D. Fla. Feb. 7, 2006)(citing University of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1542 (11th Cir.1985)). The court finds that the evidence overwhelmingly demonstrates a likelihood of confusion.

**1. Strength of the mark**

> Trademarks are classified into four categories, in order of increasing strength: 1) generic-marks that suggest the basic nature of the product or service; 2) descriptive-marks that identify the characteristic or quality of a product or service; 3) suggestive-marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and 4) arbitrary or fanciful-marks that bear no relationship to the product or service, and the strongest category of trademarks. See Frehling Enter., Inc. v. International Select Group, Inc., 192 F.3d 1330, 1335 (11th Cir.1999); Investacorp, 931 F.2d at 1522. The distinction between descriptive and generic terms is a matter of degree. See American Television & Communications Corp. v. American Communications & Television, Inc., 810 F.2d 1546, 1548-49 (11th Cir.1987).

Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 797-798 (11th Cir. 2003). Ono's Trading's trademark is clearly a strong mark since neither "Ono," nor the configuration of "Ono" as an "N" with two concentric circles around it is suggestive or descriptive of the sunglass products.

**2. Similarity between the marks**

The marks found on sunglass products displayed, sold, and/or given by defendants is exactly the same as the logo used by Ono's Trading.

**3. Similarity between the products offered**

Both plaintiffs and defendants sell multifocal sunglasses with identical styles. In fact Parnell admitted that the frames of the sunglasses he sold consisted of overstock of Ono's Trading products. There was some evidence that the lenses used were not the same in that they

were of different thicknesses. However, even assuming customers could tell the lenses were different, the court finds that the difference would not indicate to the public that the sunglasses were produced by a different company. See Fehling Enterprises, Inc. v. International Select Group, Inc., 192 F.3d 1330, 1338 (11th Cir. 1999) ("This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." citation omitted). One of the characteristics that distinguishes Ono's Trading's sunglass lenses from the lenses of sunglasses sold by other companies is that they are multifocal. Both plaintiffs' and defendants' sunglasses have multifocal lenses. Customers are very likely to believe that the same producer put out both sunglasses since defendants paired multifocal lenses with the exact same frames used by Ono's Trading.

**4. Similarity of the sales methods**

"Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." Frehling Enterprises, 192 F.3d at 1339 (citation omitted). The evidence presented by the parties indicates that defendants' sunglasses were marketed at the same or similar trade shows and retail outlets as sunglasses sold by Ono's Trading.

**5. Similarity of advertising methods**

Ono's Trading advertises in television commercials, various print publications, and on the internet. Defendants have apparently not advertised extensively. However, as Ono's Trading argues, defendants' lack of advertising allows defendants to "piggyback" on the advertising of Ono's Trading. If defendants had advertised extensively in a way that accentuated the differences between the sunglasses, confusion between the sunglasses would be less. However, here defendants' advertising methods have not decreased the likelihood of confusion.

**6. Defendants' intent**

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of

deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." Frehling Enterprises, 192 F.3d at 1340 (citation omitted). Parnell admitted that he decided to go to the Denver trade show when he discovered that Ono's Trading was going to be at the trade show. Parnell attended the trade show and sold identical products marked with the Ono logo, at a lesser price. The fact that Parnell had knowledge of the similarity between the sunglasses and purposefully chose to display and sell his sunglasses at the same trade show implies an improper intent and indicates that Parnell was attempting to benefit from the reputation of Ono's Trading and gain a competitive advantage by selling his sunglasses for less.

Parnell argues that the sunglasses he displayed at the trade show were shipped by mistake and should have had the logo removed before shipment. However, Parnell did not pull the sunglasses from the trade show or remove the logo himself (which according to Parnell can be easily accomplished with a little acetone.) The court also notes that earlier in this litigation, a preliminary injunction hearing was held which resulted in the court specifically finding that Mr. Parnell's testimony that the distribution and display of sunglasses with the Ono logo on them was inadvertent was not credible. (Doc. 94, p.4). In addition, there is extensive evidence that the sunglasses with the Ono logo were displayed, sold, and/or given to customers on other occasions. The court finds that the evidence clearly demonstrates improper intent.

**7. Proof of actual confusion**

There is also some evidence of actual confusion. A salesman for Ono's Trading, Skip Bailey, stated in his affidavit that there was much confusion among the people attending the trade show about these identical sunglass products being promoted by two different companies. There was also evidence that on another occasion, Parnell represented that his sunglass products were associated with Ono's Trading. Customers were clearly confused about the origin of defendants' products.

The court finds that the evidence outlined above overwhelmingly supports a finding that

a likelihood of confusion exists. As such, the court finds as a matter of law that defendants have engaged in unfair competition in violation of 15 U.S.C. § 1125.

**C. Damages**

Plaintiffs state in their brief that they elect to receive statutory damages pursuant to 15 U.S.C. § 1117(c). Section 1117(c) provides the following:

> (c) Statutory damages for use of counterfeit marks
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
>
> > (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Plaintiffs contend that defendants use of the Ono logo was willful and, thus, that subsection (2) is applicable. However, § 1117(c) states that it applies to the use of "counterfeit marks." The term "counterfeit mark" is defined as

> (i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36;

15 U.S.C. § 1116(d). Subsection (ii) is inapplicable here as it concerns the use of the names "Olympic," "United States Olympic Committee" and related terms and symbols. See 36 U.S.C. § 220506. Subsection (i) also does not apply here because the mark at issue is not a registered trademark. Because the Ono logo is not registered on the principal register, defendants have not used a "counterfeit mark," as defined by § 1116(d), and thus are not liable for statutory damages

pursuant to § 1117(c). See Munro and Associates, Inc. v. Huthwaite Group, L.L.C., 2006 WL 1329155, *7 (E.D.Mich. 2006); GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 307 (S.D.N.Y. 2002); Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 WL 135702, *1-*2 (S.D.N.Y.,2001). Plaintiffs have not submitted sufficient evidence at this time for the court to determine the amount of monetary damages, if any, that should be awarded under 15 U.S.C. § 1117(a). However, the court finds that permanent injunctive relief is warranted. .

## CONCLUSION

For the reasons stated above, the court finds that plaintiffs' motion for summary judgment (Doc. 73), is due to be **GRANTED** in favor of plaintiffs as to Count I - Unfair Competition (Lanham Act), and the court will issue permanent injunctive relief. However, defendants are not liable for statutory damages under 15 U.S.C. § 1117(c) and plaintiffs have submitted insufficient evidence for the court to determine the amount of monetary damages to be awarded under any other provision. Therefore, plaintiffs are ordered to file, on or before **August 30, 2006**, a brief and supporting documents demonstrating the amount of damages they believe they are entitled to under Count I. Defendants may file a response to plaintiffs' brief and supporting documents on or before **September 11, 2006**. Any reply should be filed on or before **September 21, 2006**.

Plaintiffs are further ordered to file on or before **August 30, 2006**, their proposed language for an injunction to be issued against defendants consistent with the above order.

**DONE** and **ORDERED** this 15th day of August, 2006.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE